UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

THE ANNUITY, WELFARE AND
APPRENTICESHIP SKILL IMPROVEMENT
& SAFETY FUNDS OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 15, 15A, 15C & 15D,
AFL-CIO, *by their Trustees James T. Callahan,
Thomas A.  Callahan, Michael Salgo, and
William Tyson*, CENTRAL PENSION FUND OF
THE INTERNATIONAL UNION
OF OPERATING ENGINEERS, *by its Chief
Financial Officer Joseph Shelton*, and
INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 15, 15A, 15C & 15D,
AFL-CIO, *by its President & Business
Manager Thomas A. Callahan*,

                     Plaintiffs,

    -against-

TRITON BUILDERS, INC.,

                  Defendant.

-----------------------------------------------------------X

**REPORT & RECOMMENDATION
22 CV 4809 (DLI)(LB)**

**BLOOM, United States Magistrate Judge:**

     James T. Callahan, Thomas A. Callahan, Michael Salgo, and William Tyson, as trustees of

the Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International

Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO, ("Local 15 Trust Funds"),

Joseph Shelton, as Chief Financial Officer of the Central Pension Fund of the International Union

of Operating Engineers ("CPF"), and Thomas A. Callahan, as President and Business Manager of

the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("Local

15") bring this action against defendant Triton Builders, Inc. ("Triton") pursuant to the Employee

Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") and to

1

the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 et seq. ("LMRA").

Despite proper service of the summons and complaint, defendant has failed to plead or otherwise defend this action. Plaintiffs now move for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The Honorable Dora Lizette Irizarry referred plaintiffs' motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted and a default judgment in the amount of **$268,303.96** plus interest should be entered against defendant.

## BACKGROUND[1]

The Local 15 Trust Funds and the CPF are multi-employer/employee benefit plans under ERISA and the LMRA. Compl. ¶¶ 6–8, 11–12. On March 12, 2015, defendant entered into a collective bargaining agreement ("CBA") with plaintiffs which is currently in effect. Id. ¶ 19; ECF No. 9, Callahan Affidavit ("Callahan Aff.") ¶ 3; ECF No. 12-2. Defendant agreed to be "bound to all of the terms and conditions" of the CBA. ECF No. 12-2 ¶ 1.

The CBA, which incorporates the Local 15/General Contractors Association ("GCA") Agreement,[2] requires defendant to remit: (1) contributions to the Local 15 Trust Funds and CPF based upon each regular and overtime hour of work performed by covered employees, and (2)

---

[1] The facts are drawn from the uncontested allegations in plaintiffs' complaint and documents incorporated by reference and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment); Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383, 2014 WL 1311709, at *3 n.1 (E.D.N.Y. Mar. 28, 2014) (relevant CBAs are deemed to be incorporated by reference into the complaint).

[2] Local 15 and the GCA of New York, Inc. entered into a collective bargaining agreement regarding heavy construction work (i.e. subsurface construction, excavation, demolition, and site work). Callahan Aff. ¶ 2; see also ECF No. 12-3 at 19–20. Because defendant performs heavy construction work, the Local 15/GCA Agreement is incorporated into the parties' CBA. Callahan Aff. ¶ 3.

employee-allocated supplemental union dues and political action committee payments to Local 15, based upon each regular and overtime hour of work performed by those covered employees. Compl. ¶¶ 20–21.

Pursuant to the CBA and the applicable sections of the Trust Agreements, plaintiffs conducted an audit of defendant's books and records for the period of July 1, 2017 through June 30, 2021 ("Audit Period") to determine whether defendant had made the required payments. Compl. ¶ 23; CBA, ECF Nos. 12-3 at 128–129, 12-4 at 88; Trust Agreements, ECF Nos. 12-5 at 14, 12-6 at 22–23, 12-7 at 12–13; 12-8 at 14. The audit revealed that defendant owed plaintiffs ERISA contributions totaling $223,042.10 with interest and non-ERISA contributions (supplemental dues and political action committee payments) totaling $16,175.24 with interest for the Audit Period. Compl. ¶¶ 24–26; Audit Report, ECF No. 12-9. Defendant has not paid any portion of the deficiency identified by the audit. Compl. ¶ 30.

## PROCEDURAL HISTORY

Plaintiffs filed the instant action on August 16, 2022. ECF No. 1. Plaintiffs served the summons and complaint on defendant on August 24, 2022 by personally serving Nancy Dougherty, defendant's authorized agent in the Office of the Secretary of State of New York. ECF No. 5. Defendant failed to answer or otherwise respond to the complaint, and the Clerk of Court noted defendant's default pursuant to Federal Rule of Civil Procedure 55(a). ECF Nos. 6–7. Plaintiffs now move for a Default Judgment. ECF No. 8; see also Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment Against Defendant Triton Builders, Inc. ("Mem. of Law"), ECF No. 13.

3

**DISCUSSION**

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc., 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993)). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Universal Elec. Corp., 970 F. Supp. 2d 108, 119 (E.D.N.Y. 2013). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it

remains for the Court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (internal quotation marks and citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

In evaluating defendant's liability, the Court is limited to the four corners of the complaint. Rolls-Royce PLC, 688 F. Supp. 2d at 153. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## I.    Defendant's Liability under ERISA and the LMRA

The factual allegations in plaintiffs' complaint establish defendant's liability under ERISA and the LMRA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Allegations in a complaint that an employer failed to make contributions to ERISA funds as required and failed to honor contractual obligations pursuant to a CBA sufficiently establish the employer's liability. Bricklayers Ins. & Welfare Fund v. Precise Brick, Inc., No. 08-CV-4362, 2009 WL 4891821, at * 4 (E.D.N.Y. Dec. 17, 2009) (hereinafter Precise Brick) (finding liability under ERISA where a complaint alleged that an employer violated the terms of a CBA by not making payments to covered funds); La Barbera v. Federal Metal & Glass Corp., 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009) (same).

Here, plaintiffs adequately establish defendant's liability for failing to make payments to the ERISA funds. Plaintiffs allege that defendant is an "employer," Compl. ¶ 18; that the Local 15

5

Trust Funds and the CPF are "employee pension benefit plans," "employee welfare benefit plans,' and "multi-employer/employee benefit plans," id. ¶¶ 6–8, 11–12; and that the named trustees are plan "fiduciaries" as defined by ERISA, id.  ¶¶ 5, 10. Plaintiffs further allege that defendant was obligated to make contributions to the plaintiffs pursuant to the CBA and failed to make all of the required contributions. Id. ¶¶ 19–21, 24–26. These allegations, which must be taken as true, satisfy plaintiffs' burden to establish defendant's liability. La Barbera v. Federal Metal, 666 F. Supp. 2d at 348 (finding allegations that an employer violated a CBA and the requirements of ERISA to be sufficient to establish liability).

Section 301(a) of the LMRA gives the Court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce[.]" 29 U.S.C. § 185(a). This provision provides for an employer's liability for failing to remit union dues as required pursuant to a CBA. See Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc., No. 11-CV-5742, 2013 WL 2120338, at *3 (E.D.N.Y. Apr. 3, 2013) (hereinafter Primo Brick), Report and Recommendation adopted by 2013 WL 2120318 (E.D.N.Y. May 15, 2013).

Here, plaintiffs have established defendant's liability under the LMRA. Plaintiffs allege that Local 15 is a labor organization as defined by the LMRA, that defendant is an employer obligated to make supplemental union dues and political action committee payment contributions pursuant to the CBA, and that defendant failed to do so. Compl. ¶¶ 13, 18, 21, 26; ECF No. 12-3 at 126–127, 132; ECF No. 12-4 at 86, 90. These uncontested allegations of defendant's failure to comply with contractual obligations sufficiently establish defendant's liability under the LMRA. See Finkel v. Allstar Elec. Corp., No. 11-CV-3222, 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff has established liability under Section 301 of the LMRA because it sufficiently

pleads that [defendant] failed to remit the Required Contributions in accordance with their obligations under the CBAs."); cf. The Annuity, Pension, Welfare, Training and Labor Mgmt. Coop. Tr. Funds of the Int'l Union of Operating Eng'rs Local 14-14 B, AFL-CIO v. BKS-NY, LLC, No. 18-CV-0256, 2018 WL 4522103, at *4–5 (E.D.N.Y. Aug. 6, 2018) (recommending that the Court deny unpaid contributions to a political action committee as the CBA did not reference a political action committee payment obligation as to the specified plaintiff).

Plaintiffs' complaint sufficiently establishes defendant's liability under ERISA and the LMRA for the Audit Period, July 1, 2017 through June 30, 2021. See La Barbera v. Frank J. Batchelder Transp. LLC, No. 08-CV-3387, 2009 WL 240521, at *3 (E.D.N.Y. Feb. 2, 2009) (finding liability based on allegations that defendant was a party to a CBA and failed to make required contributions). Therefore, it is respectfully recommended that the Court should grant plaintiffs' motion for a default judgment.

## II.    ERISA Damages

It is well established that a default is "deemed to constitute a concession of all well pleaded allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (internal quotation marks and citation omitted); see also Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc, 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). To determine the amount of damages, the district court "may conduct hearings or make referrals," Fed. R. Civ. P.

55(b)(2), but "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Louis, No. 06-CV-5924, 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)).

Regardless of the submitted evidence or testimony, the amount of the damages in a default judgment, "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); Sila v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) ("By limiting damages to what is specified in the 'demand for judgment', [Rule 54(c)] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer."). However, Rule 54(c) does not require a plaintiff to demand a sum certain in the complaint to recover on default. Ames v. STAT Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. 2005). Where a plaintiff's claim is not for a sum certain, a court may nevertheless award damages "so long as those damages do not depart from the type of relief sought in the complaint." Pauta v. Aena Mech. Corp., No. 11-CV-6374, 2014 WL 3855025, at *1 (S.D.N.Y. July 25, 2014) (finding an interest award in excess of the amount specified in the complaint was appropriate where the plaintiff had demanded $1,000,0000 "plus interest").

In ERISA cases seeking an award of damages after a finding of liability, Courts frequently rely on the affidavits, reports, and other documentary evidence filed by plaintiffs. See, e.g., Bricklayers Ins. & Welfare Fund v. McGovern & Co., LLC, No. 17-CV-6067, 2019 WL 2271942, at *3 (E.D.N.Y. Mar. 6, 2019), Report and Recommendation adopted by 2019 WL 1772399 (E.D.N.Y. Apr. 23, 2019) (listing the copious documentary evidence supporting plaintiffs' damages request, including declarations, shop steward reports, and rate schedules); Primo Brick,

2013 WL 2120338, at *4 (finding a hearing on damages unnecessary when plaintiffs provided multiple affirmations and additional documentary evidence); Precise Brick, 2009 WL 4891821, at *6 ("[W]here the plaintiffs have filed reasonably detailed affidavits and exhibits pertaining to the damages incurred…the Court can make an informed recommendation regarding damages without an evidentiary hearing.").

Plaintiffs request $268,303.97 in damages. Mem. of Law at 2, 15–16. In support of plaintiffs' application for damages, they submit the following:

1. Affidavit of Thomas Callahan, the president and business manager of Local 15 and a trustee of the Local 15 Trust Funds, ECF No. 9, ("Callahan Aff.");
2. Affidavit of Catherine Chase, the day-to-day administrator of the Local 15 Trust Funds, ECF No. 10, ("Chase Aff.");
3. Affidavit of Lisa Madeiras, payroll audit manager of the accounting firm Schultheis & Panettieri, LLP, retained by plaintiffs to conduct audits of contributing employers' payroll records, ECF No. 11, ("Madeiras Aff.");
4. Affidavit of James M. Steinberg, plaintiffs' counsel, ECF No. 12, ("Steinberg Aff."), which attaches
   o the summons and complaint, ECF No. 12-1;
   o the CBA, ECF No. 12-2;
   o the Local 15/GCA Agreements for the periods of July 1, 2014 through June 30, 2018 and July 1, 2018 through June 30, 2022, ECF Nos. 12-3, 12-4;
   o the Trust Agreements, ECF Nos. 12-5, 12-6, 12-7, 12-8;
   o the audit report, ECF No. 12-9;
   o the wage scale schedules identifying the contribution rates, ECF No. 12-10;
   o an invoice for service of process, ECF No. 12-11; and
   o plaintiffs' counsel's reconstructed time records, ECF No. 12-12.

Reviewed together, plaintiffs' submissions are sufficient for the Court to calculate damages for the Audit Period with reasonable certainty. No evidentiary hearing is necessary.

Section 502 of ERISA provides that where a fiduciary brings an action on behalf of a plan under Section 515 and obtains a judgment in favor of the plan, the plan shall be awarded: unpaid contributions; interest on the unpaid contributions; an amount equal to either (i) interest on the unpaid contributions or (ii) "liquidated damages provided for under the plan. . . not in excess of 20 percent (or such higher percentage as may be permitted under federal or state law)" of the

unpaid contributions, whichever is greater; reasonable attorney's fees and costs; and other appropriate legal or equitable relief. 29 U.S.C. § 1132(g)(2).

### A. Unpaid Contributions

Pursuant to 29 U.S.C. § 1132(g)(2)(A), plaintiffs are entitled to recover unpaid contributions that defendant was required to make, but failed to pay, in accordance with the CBA.

Here, an audit of defendant's books and records for the Audit Period revealed that defendant failed to remit the appropriate ERISA and non-ERISA contributions in the amount of $192,868.60. Mem. of Law at 7–8; Madeiras Aff. ¶ 5; ECF No. 12-9. The auditor reviewed defendant's payroll records to determine the total number of regular ("Reg") and/or double-time ("DT") hours worked by each Local 15 member employed by defendant during each of the 12-month periods within the Audit Period. Madeiras Aff. ¶ 3; ECF No. 12-9 at 3–7. The total number of hours worked by each employee is reported in the "Audited Hours" column of the audit report. Madeiras Aff. ¶ 3; ECF No. 12-9 at 3–7. The auditor then reviewed the "stamp redemption reports" maintained by the Local 15 Trust Funds to determine the number of hours redeemed by employees. Madeiras Aff. ¶ 4. These hours are reported in the "Redeemed Hours" column in the audit report. Id.; ECF No. 12-9 at 3–7. The "Redeemed Hours" were subtracted from the "Audited Hours" and the resulting calculation is reported in the "Difference" column of the audit report. Madeiras Aff. ¶ 4; ECF No. 12-9 at 3–7.

Because employers are awarded credit for any "fringe benefit stamps" purchased by the employer but not redeemed by the employee, the employer is credited for any such unredeemed stamps as reflected in the Audit Report under the "Credit for Unredeemed Hours" row. Madeiras Aff. ¶ 4. Accordingly, the unredeemed hours were credited to the employer (i.e., subtracted from the "Difference"), and the resulting number represents the "Total Hours Due." Id.

The auditor then multiplied the "Total Hours Due" by the applicable contribution rates which are identified on the Wage Schedules, ECF No. 12-10 at 11 (effective July 1, 2017 to June 30, 2018), 31 (effective after July 1, 2018 to June 30, 2019), 54 (effective after July 1, 2019 to June 30, 2020), and 72 (effective after July 1, 2020) to calculate the total amount owed, or the "Principal" as reflected in the audit report. Madeiras Aff. ¶ 5; ECF No. 12-9.

The audit report shows defendant owes the following ERISA contributions for each of the following periods in the audit report: [3]

| ERISA | Period 1 | Period 2 | Period 3 | Period 4 | Period 5 | **TOTAL** |
|---|---|---|---|---|---|---|
| Regular | 80.00 | 1,000.00 | 1,088.00 | 2,080.00 | 1,080.00 | - |
| Double Time | - | - | 10 | - | - | - |
| Welfare | $ 640.00 | $ 8,050.00 | $ 9,750.40 | $19,864.00 | $10,584.00 | $ 48,888.40 |
| Pension | $ 592.00 | $ 7,400.00 | $ 8,125.20 | $15,392.00 | $ 7,992.00 | $ 39,501.20 |
| Annuity | $ 980.00 | $12,250.00 | $14,127.00 | $27,040.00 | $14,310.00 | $ 68,707.00 |
| Apprentice | $ 80.00 | $ 1,000.00 | $ 1,108.00 | $ 2,080.00 | $ 1,080.00 | $ 5,348.00 |
| MRA | $ 100.00 | $ 1,200.00 | $ 1,329.60 | $ 1,976.00 | $ 1,026.00 | $ 5,631.60 |
| Vacation | $ 340.00 | $ 4,250.00 | $ 4,709.00 | $ 9,880.00 | $ 5,400.00 | $ 24,579.00 |
| NTF | $ - | $ - | $ 55.40 | $ 104.00 | $ 54.00 | $ 213.40 |
| **TOTAL** | $2,732.00 | $34,150.00 | $39,204.60 | $76,336.00 | $40,446.00 | **$ 192,868.60** |

ECF No. 13-9; Mem. of Law at 7–8. Upon review of the audit report, the Court notes minor discrepancies between the relevant contribution rates listed in the audit report and those set in the Wage Schedules, ECF No. 12-10 at 11 (effective July 1, 2017 to June 30, 2018), 31 (effective after July 1, 2018 to June 30, 2019), 54 (effective after July 1, 2019 to June 30, 2020), and 72 (effective

---

[3] The Court references the periods as they are defined in the audit report, as follows:
> July 1, 2017 – December 31, 2017 = **Period 1**
> January 1, 2018 – June 30, 2018 = **Period 2**
> July 1, 2018 – June 30, 2019 = **Period 3**
> July 1, 2019 – June 30, 2020 = **Period 4**
> July 1, 2020 – June 30, 2021 = **Period 5**

after July 1, 2020). For example, the audit report provides $8.05 as the contribution rate for welfare benefits during Period 2, whereas the Wage Schedule provides $8.00 as the relevant rate for that same period. ECF No. 12-9 at 4; ECF No. 12-10 at 11. Likewise, the contribution rates for vacation benefits provided in the audit report are consistently $0.05 less than the relevant rates provided in the Wage Schedules. ECF No. 12-9 at 3–7; ECF No. 12-10 at 11, 31, 54, and 72. Based on the contribution rates provided in the Wage Schedules, the Court calculates a total amount of $193,136.00 in unpaid ERISA contributions.

However, as discussed above, Fed. R. Civ. P. 54(c) requires that a default judgment not "exceed in amount…what is demanded in the pleadings." Here, the complaint demands a sum certain that relies on the amounts given in the audit report. Compl. ¶¶ 32, WHEREFORE clause. While the Court notes errors in the audit report's calculations, it cannot award an amount greater than what plaintiffs demanded in the pleadings. Therefore, it is respectfully recommended that the Court should award plaintiffs the requested amount of $192,868.60 in unpaid ERISA contributions.

### B. ERISA Prejudgment Interest

Plaintiffs are entitled to prejudgment interest on the delinquent contributions. 29 U.S.C. § 1132(g)(2)(B). The ERISA provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2)(E). The following interest rates are provided in the Trust Agreements: 6% for welfare, annuity, apprentice/training (including the National Training Fund or "NTF"), MRA and vacation contributions paid to Local 15 Trust Funds; and 9% for pension contributions paid to CPF. See ECF Nos. 12-5 at 22 (Annuity Fund), 12-6 at

31 (Welfare Fund), 12-7 at 18 (Apprenticeship/Training Fund), and 12-8 at 15 (Pension); see also

Madeiras Aff. ¶ 6.  Plaintiffs used the following formula to calculate prejudgment interest:

[number of days from the end of each Period through June 22, 2022[4]] x [applicable interest rate pursuant to the Trust Agreement] ÷ [365 days] x [principal due per Period]

Madeiras Aff. ¶ 6. Using this formula, the interest due on defendant's delinquent contributions is

as follows:

| | | Period 1 | Period 2 | Period 3 | Period 4 | Period 5 | |
|---|---|---|---|---|---|---|---|
| | No. of days from end of Period through 6/22/2022 | 1,634 days | 1,453 days | 1,088 days | 722 days | 357 days | |
| | Principal per Period | Interest Due | | | | | Total Interest Due |
| Welfare | 1. $640.00<br>2. $8,050.00<br>3. $9,750.40<br>4. $19,864.00<br>5. $10,584.00 | $ 171.91 | $ 1,922.74 | $ 1,743.85 | $ 2,357.56 | $ 621.12 | $ 6,817.17 |
| Pension | 1. $592.00<br>2. $7,400.00<br>3. $8,125.20<br>4. $15,392.00<br>5. $7,992.00 | $ 238.52 | $ 2,651.23 | $ 2,179.78 | $ 2,740.20 | $ 703.51 | $ 8,513.24 |
| Annuity | 1. $980.00<br>2. $12,250.00<br>3. $14,127.00<br>4. $27,040.00<br>5. $14,310.00 | $ 263.23 | $ 2,925.90 | $ 2,526.60 | $ 3,209.24 | $ 839.78 | $ 9,764.76 |
| Apprentice | 1. $80.00<br>2. $1,000.00<br>3. $1,108.00<br>4. $2,080.00<br>5. $1,080.00 | $ 21.49 | $ 238.85 | $ 198.17 | $ 246.86 | $ 63.38 | $ 768.75 |
| MRA | 1. $100.00<br>2. $1,200.00<br>3. $1,329.60<br>4. $1,976.00<br>5. $1,026.00 | $ 26.86 | $ 286.62 | $ 237.80 | $ 234.52 | $ 60.21 | $ 846.01 |
| Vacation | 1. $340.00 | | | | | | |

---

[4] The audit report calculated plaintiffs' interest owed through June 22, 2022. See Mem. of Law at 8. It is unclear why June 22, 2022 was used as the end date. Plaintiffs are entitled to prejudgment interest from June 23, 2022 through the date judgment is entered using the same formula.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 2. $4,250.00<br>3. $4,709.00<br>4. $9,880.00<br>5. $5,400.00 | $ 91.32 | $ 1,015.11 | $ 842.20 | $ 1,172.61 | $ 316.90 | $ 3,438.14 |
| **NTF** | 1. $0.00<br>2. $0.00<br>3. $55.40<br>4. $104.00<br>5. $54.00 | - | - | $ 9.91 | $ 12.34 | $ 3.17 | $ 25.42 |
| **Total Principal** | $192,868.60 | | | | | **Total Interest** | **$30,173.49** |

It is respectfully recommended that the Court should award the Local 15 Trust Funds and CPF $30,173.49[5] in prejudgment interest on the principal sum of $192.868.60 calculated at the interest rate of 6% (9% for pension contributions) through June 22, 2022. Furthermore, it is recommended the Court should award the Local 15 Trust Funds and CPF an additional sum of interest on the principal sum of $192,868.60 to be calculated at the annual rate of 6% (9% for pension contributions) for the period June 23, 2022 through the date judgment is entered by the Court.

### C. Liquidated Damages

Plaintiffs are entitled to liquidated damages on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20% of the delinquent contributions). 29 U.S.C. § 1132(g)(2)(C)(i)–(ii). Here, plaintiffs Local 15 Trust Funds request $15,336.74 in liquidated damages on the principal sum of $153,367.40 in delinquent contributions, which they calculate at a 10% rate in accordance with applicable provisions of the Trust Agreements. Mem. of Law at 9; Trust Agreements, ECF Nos. 12-5 at 22 (Annuity Fund), 12-6 at 31 (Welfare Fund), and 12-7 at 18 (Apprenticeship/Training Fund).

---

[5] The audit report reflects a total amount of $30,173.50 in prejudgment interest.

Plaintiff CPF requests $7,900.24 in liquidated damages on the principal sum of $39,501.20, see Mem. of Law at 9, pursuant to its Trust Agreement, which sets liquidated damages in "an amount up to twenty percent (20%) of the amount found to be delinquent[.]" ECF No. 12-8 at 14–15. Having reviewed the applicable provisions of the Trust Agreements, it is respectfully recommended that the Court should award $15,336.74 in liquidated damages on the principal sum of $153,367.40 in delinquent contributions to Local 15 Trust Funds, and $7,900.24 in liquidated damages on the principal sum of $39,501.20 in delinquent contribution to CPF, for a total $23,236.98 in liquidated damages.

### D. Attorney's Fees

Plaintiffs are entitled to reasonable attorney's fees. 29 U.S.C. § 1131(g)(2)(D); see also Trust Agreements, ECF Nos. 12-5 at 22 (Annuity Fund), 12-6 at 31 (Welfare Fund), 12-7 at 18 (Apprenticeship/Training Fund), and 12-8 at 15. Courts in this Circuit award attorney's fees to a prevailing party by calculating the "presumptively reasonable fee." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009).

The Court determines the presumptively reasonable fee by multiplying the number of hours the attorney spent on the litigation by "a reasonable hourly rate." Gesualdi v. Interstate Payroll Co., Inc., No. 2:14-CV-6780, 2019 WL 109379, at *7 (E.D.N.Y. Jan. 4, 2019) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). A reasonable rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . where the district court sits." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008); see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) ("[T]he requested rates [must be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."). After

the reasonable hourly rate is determined, the Court multiplies that rate by the reasonable number

of hours the attorney expended, to determine a presumptively reasonable fee.

The party seeking fees bears the burden of establishing that the number of hours for which

it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34

F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley, 461 U.S. at 437). A request for attorney's fees

must be "supported by contemporaneous time records that show, 'for each attorney, the date, the

hours expended, and the nature of the work done.'" Bd. of Trs. of Pointers, Cleaners & Caulkers

Welfare Fund, Pension Fund and Annuity Fund v. Super Eagle Contracting Inc., No. 12-CV-0399,

2013 WL 802034 at *4 (E.D.N.Y. Jan. 16, 2013), Report and Recommendation adopted by 2013

WL 802847 (E.D.N.Y. Mar. 5, 2013) (quoting New York State Ass'n for Retarded Children, Inc.

v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).

The reasonable hourly rate for partners in this District ranges from $300 to $450. See, e.g.,

Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co., Inc., 270 F.

Supp. 3d 593, 618 (E.D.N.Y. 2017) (finding that "prevailing rates for experienced attorneys in the

Eastern District of New York range from approximately $300 to $400 an hour . . . and some courts

"have recognized slightly higher ranges in this district of $300–$450 per hour for partners[.]"

(collecting cases)).

Plaintiffs request an award of $2,562.50 in attorney's fees for 6.25 attorney hours expended

at an hourly rate of $410.00. Mem. of Law at 9; see also ECF No. 12-12. Plaintiffs' counsel submits

a "reconstructed record" of his original, contemporaneous time entries to support the attorney's

fee request. Mem. of Law at 9; ECF No. 12-12. The Annuity, Pension, Welfare and Training Funds

of the Int'l Union of Operating Eng'rs, Local 14-14B AFL-CIO v. Superior Site Work, No. 15-

CV-543, 2017 WL 639248, at *7 n.13 (E.D.N.Y. Feb. 16, 2017) ("[C]ourts recognize that attorney

16

affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous [time] records . . . suffice to permit recovery of attorneys' fees[.]") (internal quotation marks and citation omitted). Mr. Steinberg is a partner of the law firm Brady McGuire & Steinberg, P.C., and has been practicing in this field of law for more than 27 years. Steinberg Aff. ¶¶ 1, 11. Plaintiffs' counsel's hourly rate is in line with awards in this District to counsel with comparable experience. See Ret. Fund of Local 1482 Paint & Allied Prod. Mfrs. v. N. Adhesives, Inc., No. 19-CV-5609, 2020 WL 6370060, at *4 (E.D.N.Y. May 27, 2020) (collecting cases and noting that in ERISA matters, "reasonable rates for the Eastern District rang[e] from $300 to $450 per hour for partners"); Gesualdi v. Tadco Constr. Corp., No. 19-CV-5606, 2021 WL 260564, at *4 (E.D.N.Y. Jan. 5, 2021), Report and Recommendation adopted by 2021 WL 260094 (E.D.N.Y. Jan. 26, 2021) (awarding an hourly rate of $410.00 to a partner in an ERISA default judgment case). Furthermore, the 6.25 hours Mr. Steinberg spent on this litigation falls well within the range considered reasonable in this district. Gesualdi v. Reid, No. 19-CV-4132, 2021 WL 8316386, at *14 (E.D.N.Y. Aug. 12, 2021) (finding 23.35 hours spent on an ERISA default reasonable and collecting cases in which reasonable hours expended range from 21 to 26 hours). Accordingly, it is respectfully recommended that the Court should award $2,562.50 in attorney's fees to the Local 15 Trust Funds and CPF.

**E. Audit Fees**

Plaintiffs request $2,765.15 in auditor's fees in accordance with the applicable provisions of the Trust Agreements. Mem. at Law at 12; ECF Nos. 12-5 at 22 (Annuity Fund), 12-6 at 31 (Welfare Fund), 12-7 at 18 (Apprenticeship/Training Fund), and 12-8 at 15 (Pension). Courts may award "such other legal or equitable relief as the Court deems appropriate," 29 U.S.C. § 1132(g)(2)(E) and regularly award reasonable audit costs. Trustees of Loc. 7 Tile Indus. Welfare

17

Fund v. AM Tile Specialty Constr., No. 19-CV-1809, 2020 WL 7034025, at *11 (E.D.N.Y. Sept. 23, 2020), Report and Recommendation adopted by 2020 WL 7021646 (E.D.N.Y. Nov. 30, 2020) (finding $4,390.40 in audit fees reasonable in light of other audit fee awards in this District). "Requests for audit fees must be supported by records . . . sufficient to allow the court to determine the reasonableness of audit costs." Trs. of Steamfitters' Local Union No. 638 v. Nexus Mech., Inc., No. 08-CV-3214, 2014 WL 1338377, at *8 (E.D.N.Y. Apr. 2, 2014) (internal quotation marks and citations omitted). "The evidence in support of recovering audit fees must include, at a minimum, some breakdown of the auditors' rates charged and hours expended." Gesualdi v. Diversified Carting, Inc., No. 10-CV-2561, 2014 WL 5475357, at *3 (E.D.N.Y. Oct. 29, 2014) (internal quotation marks and citation omitted).

Here, plaintiffs submit a report identifying the hours and rates charged to conduct the audit, which the payroll audit manager swears is accurate. Madeiras Aff. ¶ 7, at Ex. A. The report shows 22.10 staff hours expended at a rate of $94.00/hour and 5.25 manager/supervisor hours expended at a rate of $131.00/hour for a total of $2,765.15. Madeiras Aff. at Ex. A. This amount is reasonable. Therefore, plaintiffs should be awarded $2,765.15 in audit fees.

**F. Costs**

"In a successful action under ERISA to recover delinquent contributions, courts may award reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients." Trs. of Plumbers Local Union No. 1 v. Temperini Mech., Inc., No. 12-CV-5646, 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (internal quotations marks and citation omitted) (citing 29 U.S.C. § 1132(g)(2)(D)).

Plaintiffs request $522.00 in costs, comprised of $402.00 for the filing fee and $120.00 for the service of process fee. Mem. of Law at 12–13; ECF No. 12-11. In support of their request,

plaintiffs submit an invoice for the process server costs. ECF No. 12-11. Although plaintiffs did not submit a receipt for the filing fee, the Court takes judicial notice of the $402.00 filing fee. See BKS-NY, LLC, 2018 WL 4522103, at *12 (E.D.N.Y. Aug. 6, 2018) (taking judicial notice of the filing fee); Coastal Environmental Group, Inc., 2019 WL 4603805, at *11–12 (E.D.N.Y. Sep. 5, 2019), Report and Recommendation adopted by 2019 WL 4602851 (Sep. 23, 2019) (awarding filing fee after reviewing the docket). Accordingly, it is respectfully recommended that the Court should award plaintiffs $522.00 in costs.

### III.    Non-ERISA Damages

Plaintiffs seek $16,175.24 in non-ERISA contributions, owed to Local 15 for supplemental union dues and political action committee payments pursuant to the terms of the CBA and contribution rates set in the Wage Schedules. Mem. of Law at 14; Callahan Aff. ¶ 6; Chase Aff. ¶ 7; ECF No. 12-3 at 126–127, 132; ECF No. 12-4 at 86, 90; ECF No. 12-10 at 11 (effective July 1, 2017 to June 30, 2018), 31 (effective after July 1, 2018 to June 30, 2019), 54 (effective after July 1, 2019 to June 30, 2020), and 72 (effective after July 1, 2020). As discussed, plaintiffs have sufficiently pled their claim for LMRA damages. According to the audit report, defendant failed to remit the following amounts:

|  | Period 1 | Period 2 | Period 3 | Period 4 | Period 5 | TOTAL |
|---|---|---|---|---|---|---|
| **PAC** | $    4.00 | $   50.00 | $   55.40 | $  104.00 | $   54.00 | $     267.40 |
| **Supplemental Dues** | $  217.60 | $2,720.00 | $3,191.04 | $ 6,323.20 | $ 3,456.00 | $ 15,907.84 |
| **TOTAL** | $  221.60 | $2,770.00 | $3,246.44 | $ 6,427.20 | $ 3,510.00 | **$ 16,175.24** |

ECF No. 12-9. Having reviewed the CBAs, rates as set out in the Wage Schedules, and the audit report and finding that the requested amount is accurate for the Audit Period, it is respectfully recommended that the Court should award $16,175.24 in LMRA damages to Local 15.

### A. Non-ERISA Prejudgment Interest

Plaintiffs seek prejudgment interest on the delinquent non-ERISA contributions. Because the CBA does not provide a rate of interest for delinquent non-ERISA contributions, plaintiffs request that the Court apply a nine percent (9%) annual interest rate based on New York C.P.L.R. § 5004, calculated using the "single reasonable intermediate date" of July 1, 2019. Mem. of Law at 14–15. Courts in this district have applied the § 5004 rate to calculate interest on non-ERISA delinquencies. Superior Site Work, 2017 WL 639248, at *8–9 (collecting cases). I therefore recommend awarding interest at the New York State statutory annual rate of 9%. See Nexus Mechanical, Inc., 2014 WL 1338377, at *6 (E.D.N.Y. Apr. 2, 2014) (awarding interest for non-ERISA damages at the statutory rate under New York law where CBA did not provide for the interest rate) (collecting cases).

Where damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); see BKS-NY, LLC, 2018 WL 4522103, at *13 (applying the "single reasonable intermediate date."). Accordingly, courts calculating damages in ERISA cases "routinely calculate prejudgment interest from a midpoint date in the delinquency period." Superior Site Work, 2017 WL 639248, at *9.

Here, the daily prejudgment interest rate on the unpaid non-ERISA contributions, calculated at a rate of 9% per year is $3.99.[6] The intermediate date of the delinquency period— July 1, 2017 through June 30, 2021— is July 1, 2019. Accordingly, it is respectfully recommended that the Court should calculate the interest award to Local 15 by multiplying the daily prejudgment interest rate, $3.99, by the number of days between July 1, 2019 and the date of judgment.

---

[6] $16,175.24 x (0.09 / 365 days) = $3.99

**CONCLUSION**

For the reasons set forth above, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted. A default judgment should be entered against defendant in the amount of **$268,303.96** granting plaintiffs the following awards plus interest:

| Plaintiff Local 15 Trust Funds and CPF | Plaintiff Local 15 |
|---|---|
| $192,868.60 in unpaid ERISA contributions<br><br>$30,173.49 in interest on unpaid ERISA contributions (through March 16, 2022)<br><br>$23,236.98 in liquidated damages<br><br>$2,562.50 in attorney's fees<br><br>$2,765.15.48 in audit fees<br><br>$522.00 in costs | $16,175.24 in unpaid union dues and PAC contributions |
| Total: **$252,128.72** + additional prejudgment interest from June 23, 2022 through entry of judgment. See Section II. B. | Total: **$16,175.24** + prejudgment interest of $3.99 per day between July 1, 2019 through entry of judgment. See Section III. A. |

Plaintiffs are hereby ordered to serve a copy of this Report upon defendant at its last known address and to file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: November 16, 2022
      Brooklyn, New York